MORGAN CONST. CO. v. FRANK.

(Circuit Court of Appeals, Sixth Circuit. January 23, 1908.)

No. 1,713.

1. MASTER AND SERVANT—DUTY OF MASTER—SAFE PLACE TO WORK.

The duty of a master to provide a safe place for the servant to work does not extend to a place made dangerous by the very work in which the workmen are engaged, whether by its inherent character, or resulting from negligent performance by the workmen or those who stand in law in the relation of fellow servants to them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 171–174, 179, 205, 209.]

2. SAME—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANTS.

Plaintiff's decedent, while in the employ of defendant and engaged in digging a pit in a building, was killed by the falling of a pile of iron plates which had been stacked near the side of the pit and by their weight caused the earth to cave in. Defendant was a contractor engaged in making repairs in a manufacturing plant, the floor of which was covered with iron plates. It became necessary to make a pit under the floor, and the plates were taken up by deceased or his fellow workmen and piled in the place from which they afterward fell. Held, that the place being safe when the workmen were placed there to work, the negligence, if any, in piling the plates too near where the excavation was to be made was not that of defendant, it not being shown that it directed such piling, nor was it under duty to warn the decedent of the danger, which was as obvious to him as to any one.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 310–316½.]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

H. H. McKeehan, for plaintiff in error.
Charles Koonce, Jr., for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. The intestate, Hosie Seidner, came to his death while engaged in the service of the plaintiff in error, and this was a suit by his administrator to recover damages. There was a verdict and judgment against the construction company.

That company was a corporation engaged in the construction and repair of manufacturing plants, and, at the time of this accident, was engaged in doing, under contract, certain improvement work in the plant of the Morgan Spring Company, the deceased being one of its employés engaged in said work. The plaintiff's petition alleged that the intestate, when killed, was engaged with others in the excavation of a pit inside of one of the buildings of the plant under repair or reconstruction. This pit was 7 feet by 7 feet and intended to be carried to a depth of about 12 feet. Alongside of this pit was a pile of old iron plates, which had been a covering of the floor of the building in which this work was being done, and which had been removed by the plaintiff in error and stacked, preliminary to the excavation work. When the excavation had reached a depth of about five feet, the wall of earth next to this pile of plates gave way and some of the heavy plates fell

into the pit, killing the deceased. At the close of the plaintiff's evidence the defendant asked for a peremptory instruction, which was denied, and exception reserved. The defendant, relying upon the insufficiency of the plaintiff's evidence, declined to put in any evidence. The case was then given to the jury under a general charge, to which exceptions were sparingly reserved and now assigned as error.

The case, however, has been mainly presented upon the question as to whether there was sufficient evidence to carry the case to the jury, and we find it unnecessary to consider any other error assigned. The burden was upon the plaintiff to show that the injury was due to some negligent act for which the master was, in law, responsible. If it happened by reason of the negligence of some fellow servant, the master would not be liable, unless the plaintiff went further and showed a negligent employment or retention of an incapable servant, or that the particular matter of negligence was one which the master could not delegate to another. In Illinois Central R. R. v. Coughlin, 132 Fed. 801, 803, 65 C. C. A. 101, 103, we said:

"Neither is it enough for the injured employé to show that the injury may have been the result of the negligence of the employer, or may have been the result of some cause for which the employer was not responsible. The burden of proof being upon him, he must be able to show that the injury was the consequence of the negligence of the employer. As put by the Supreme Court in Patton v. T. & P. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361: 'When the testimony leaves the matter uncertain, and shows that any one of a half dozen causes may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show the negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs.'"

It is therefore not required that the defendant should specially plead the act of a fellow servant as a defense, for the averment of a negligent injury by the defendant means actionable negligence, negligence for which, in law, the defendant is liable. Pennsylvania Co. v. Fishack, 123 Fed. 465, 59 C. C. A. 269. But the defendant in error insists that the duty of furnishing to the servant a reasonably safe place in which to work is a personal duty of the master, and not capable of being delegated, and that this accident was due to a default in this respect. But here the place was safe enough until it was made dangerous by the reconstruction operations being carried on. The evidence was meager, but enough was shown, in connection with the averments of the plaintiff's petition, to make it clear that the work which the construction company was doing involved the taking up of the iron plates covering the floor, for the purpose of making a trench and pits in which to construct walls and piers of brick work. These plates were thin, about one and one-half inches, and were seventy-two by thirty inches in length and breadth. Thirty of them were taken up from the floor and piled in a stack about four feet high by some of the servants of the defendant Construction Company. When, and by which of defendant's servants, does not appear. The only evidence introduced by the plain-

tiff is that they were so stacked when this particular pit was started at about 3 o'clock p. m. the day before they fell upon Seidner while working in the pit. It is said, in view of the projected trench or pit in proximity to this lot of plates and the loamy, gravelly character of the floor to be excavated, that these plates were insecurely stacked, or negligently placed too close to the projected excavation. One corner rested upon an old brick pier, with an upward projecting bolt, which raised the corner five or six inches above the ground level and gave the plates an inclination toward the side upon which the excavation was afterwards started. This manner of piling up the plates, if we assume it to be negligent, is claimed to be the negligence of the employer, as the place was thereby made dangerous for those who might be called upon to work in the vicinity. This assumes the whole issue. The place, meaning the general premises in which the plates were temporarily stacked and the work of construction going on, was provided by the owner of the plant under alteration. Unless it was made unsafe by the construction work being then carried on by the plaintiff in error, it was in no sense a dangerous or unsafe place for the purpose which required the services of the decedent and his fellows. Neither can it be, at this time, longer contended, that the duty of providing a safe place or structures extends to places or structures made dangerous by the very work in which the workmen are engaged, so far as safety depends upon the due performance of that work by them or those who stand in law in the relation of fellow servants. Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440; Deye v. Lodge & Shipley Tool Co., 137 Fed. 480, 488, 70 C. C. A. 64; American Bridge Co. v. Seeds, 144 Fed. 605, 613, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041. A part of the work being carried on in that place involved the taking up of these old iron floor plates and their temporary disposition until certain excavations could be made under the floor, and certain brick walls or piers put down. The workmen who took them up and piled them where they were found, whether the place and manner of piling was by direction of some immediate superior or not, were fellow servants. It was a kind of work which the master might well leave to the men engaged in the general work, and, if they did this work negligently, the risk was one which those engaged in the same general work assumed. The case in this respect is well within and controlled by Deye v. Lodge & Shipley Tool Co., 137 Fed. 480, 483, 70 C. C. A. 64. That was an action for the injury of one by the falling of a pile of castings near which he was called upon to work. We there said:

"* * * The master's obligation to supply a safe place for his work to be done, and to keep it safe, does not impose the duty of always keeping it in a safe condition so far as its safety depends upon the proper performance of the very work which his servants have undertaken to do. If a negligent manner of doing the work makes the place less safe, that is one of the risks which all engaged in the work have assumed as a risk of the occupation. If it was the duty of the defendant company to see that Lutz used sticks in piling these castings while waiting the next step in the work upon them, it would be hard to say why it would not be equally the duty of an employer to supervise the temporary piling or storing of brick or lumber or stone or barrels or boxes containing the material to be used by the men upon the premises. Matters of this kind are not so complex or dangerous as to demand the direct supervision of the master, but are details which, from a reasonable consideration of

the rule of master and servant, may be and must be left to the common sense of the men doing the work, as one of the risks of the business. Cullen v. Norton, 126 N. Y. 1, 6, 26 N. E. 905; Morgan v. Hudson River Ore Co., 133 N. Y. 666, 31 N. E. 234; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021."

In Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440, it was held that the court below had erred in not directing a verdict for the defendant where the plaintiff had been injured while engaged with others in the construction of a building, and had fallen by having placed his foot upon a projecting timber which had not been bricked in at its inner end. "If," said the court, "it was at the time insecure, it was either by reason of the risks ordinarily incident to the state of things in the unfinished condition of the building; or else by reason of some negligence of one of the carpenters or bricklayers, all of whom were employed and paid by the same master, and were working in the course of their employment at the same time and place, with an immediate common object—the erection of the building—and, therefore, within the strictest limits of the rule of law upon the subject of fellow servants.   *   *   *"

If the plaintiff had wished to ground liability upon the continuance of an insecure pile of plates in dangerous proximity to the excavation, it devolved upon him to show that the master had had knowledge for a sufficient time to enable him to correct the matter. Carnegie Steel Co. v. Byers, 149 Fed. 667, 82 C. C. A. 115, 8 L. R. A. (N. S.) 677. There was not sufficient evidence upon this point to carry the case to the jury.

It has been suggested that the presence of this sloping pile of heavy plates within two or three feet of the western side of the excavation in which Seidner was put to work, in connection with the loamy, gravelly character of the ground, involved danger of a cave-in and precipitation of these plates, of which the deceased should have been warned. But Seidner was not an inexperienced man. Before he went into this pit he had been using a barrow about the premises and part of the time wheeling dirt out from this very excavation. From the meager facts which the plaintiff put in, it is quite evident that Seidner exchanged barrow work for excavation. There is at hand no evidence that the master knew or ought to have known of any danger which was not apparent to any workman of ordinary intelligence, engaged in the work. "It is the knowledge of the master of the inexperience and disqualifications of the servant of the dangers known to the master which fastens upon the latter the duty of taking reasonable care that the servant shall not sustain an injury through such known inexperience." Felton v. Girardy, 104 Fed. 127, 132, 43 C. C. A. 439; L. & N. R. R. Co. v. Miller, 104 Fed. 124, 43 C. C. A. 436.

There was not sufficient evidence to carry this case to the jury, in any aspect, and it was error to refuse the motion for a peremptory instruction.